

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-178-CR

MONTERIO DESHA HILL                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

Appellant Monterio Desha Hill appeals his two convictions for possession with intent to deliver a controlled substance; namely, cocaine and ecstacy.[1] In twenty-five points, Hill argues that the trial court erred by denying his motion to suppress evidence; that the trial court erred by admitting photos of a gun

---

[1] *See* Tex. Health & Safety Code Ann. §§ 481.112(d), 481.115(d) (Vernon Supp. 2009).

found by police during a search of Hill's sport utility vehicle (SUV); that the trial court erred by overruling his objections to comments made by the prosecutor during closing arguments; and that he received ineffective assistance of counsel at trial.  We will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2008, officers for the Fort Worth Police Department's gang unit were patrolling on the east side of Fort Worth.  According to Sergeant Stephen Enright, the area had recently been plagued with a rash of robberies. As a result, there were roughly seven officers patrolling as a group on January 29—some in marked police vehicles and others in unmarked police vehicles. Enright testified at trial that Hill's SUV originally caught his attention because it pulled into the back of a McDonald's parking lot and stopped, but no one got out of the vehicle.  After a short time, Hill's SUV drove away from McDonald's, only to enter the parking lot of a convenience store about a block away, remain still for a moment, and then eventually continue through the parking lot and back into a parking spot in front of the store—again, no one got out of the vehicle.  During his observation of Hill's SUV, Enright noticed that the SUV had dark tinting on its windows.  Enright believed the tinting was illegal.  After staying parked in the convenience store parking lot for several minutes, Hill's SUV left the convenience store, traveled a short distance, and made a left-hand

2

turn into a nearby shopping center. Enright said that Hill failed to use his signal during the turn.

Enright initiated a traffic stop. As several police cars pulled up, Hill, who was driving the SUV, and the front passenger opened their doors and exited the vehicle. They both left their doors open. Officer Jesus Alanis testified that he observed Hill exit his SUV. Alanis said that as he exited, Hill turned to look at Enright and his partner, who had pulled in front of Hill, and that Hill "reach[ed] towards his shirt, kind of reaching under his shirt on his back." Alanis said that he suspected Hill was reaching for a weapon, so Alanis drew his gun and shouted at Hill to "let me see [your] hands[!]" After Alanis drew his gun, several of the other officers, including Enright, drew their weapons as well. One of the officers placed handcuffs on Hill. The officers also conducted a pat-down of Hill. Alanis said that as soon as the officers determined that Hill did not have a weapon, the officers holstered their weapons and continued the traffic stop, which included determining whether there were other occupants of the SUV.

Alanis said that "the tint and the interior of the cabin was pretty dark, so I couldn't see if anybody was back there." He eventually ascertained that two more passengers were in the back of the SUV, and he had them exit the SUV.

3

Enright testified that when he approached Hill's SUV, the driver's side door was open because Hill had opened it when he exited. Enright said he simply looked into the vehicle and observed a brown paper bag wedged between the driver's side seat and the center console. According to Enright, "[I]n that brown paper bag visible was a clear plastic [baggie] containing an off-white rock-like substance, which through my experience led me to believe it was crack cocaine." Alanis testified that Enright signaled to him that he could see illegal drugs in the SUV. Alanis said that Enright pointed to the front seat, and from Alanis's view, he could see "a brown paper bag that appeared to be semi-torn open. There was a clear plastic [baggie] container and you could see some off-colored -- off-white colored rocks. Looked like crack cocaine." The officers arrested Hill for possession of a controlled substance with intent to deliver.

After Hill was arrested, the officers continued to search Hill's SUV. The search revealed another bag in the passenger floorboard that contained ecstacy, marijuana, and a digital scale. The vehicle search revealed a container that looked like a salt shaker that had a "false lid" that when opened contained roughly twenty pinkish-orange colored pills later discovered to be ecstacy. The officers also discovered a substantial amount of cash—$1,074 in varying denominations—on the appellant. The officers further found a fully loaded .40

4

caliber automatic pistol next to the air cleaner under the hood of Hill's SUV. The officers also determined that the tint on the windows of Hill's SUV was illegally dark.

Hill's trial counsel did not file a written motion to suppress. Instead, after trial began and after the prosecutor asked Enright a few questions, Hill's trial counsel verbally moved to suppress the evidence found in Hill's SUV on the ground that the search of the SUV was the "result of an illegal arrest." The trial court overruled trial counsel's motion. The trial continued. Enright, Alanis, Officer Perales, and Corporal Combs all testified to their accounts of the evening. That testimony included, without objection, the discovery of the gun under the hood of Hill's SUV. But when the prosecutor offered photographs of the gun, trial counsel objected on the basis that the gun was not relevant to the charges. The trial court overruled the objection. Later, during closing arguments, the following colloquy took place:

> [Prosecutor to Jury]: And, you know, the only reason why they could see who was in that car at the time they did, because these people had a guilty conscience. [Hill] had a guilty conscience and when he sees these officers pulling up on him, I got to get out of this car because my dope is in here, I'm going to distance myself and he starts getting out. The front seat passenger who also knows there's dope in the car, she distances herself and starts walking away. That's what they're doing, because they know what's in that car.

5

And don't tell me that someone from the backseat threw this dope up in the front seat or stuffed it up in that front seat while he was sitting there. You think he wouldn't put up a fight and say, Man, don't put your dope on me. You know, that's not how it happened.

[Defense counsel]: I -- Judge, that's a comment on Defendant's failure to testify because it's a question that only he can answer.

THE COURT: All right. That's -- that's overruled. It's just final argument. Argument is not evidence, ladies and gentlemen.

After closing arguments, the jury retired to deliberate. The jury returned a verdict of guilty on both charges, and the trial court assessed punishment at life for the cocaine and sixty years' incarceration for the ecstacy. The trial court ordered the sentences to run concurrently. This appeal followed.

## III. DISCUSSION

### A. Motion to Suppress

In his first, second, and third points, Hill argues that the trial court erred by denying his motion to suppress evidence found in his SUV. We disagree.

### 1. Standard of Review for Motion to Suppress

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App.

6

1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we

7

determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## 2.  The Traffic Stop and the Officers' Detention of Hill

In part of his first, second, and third points, Hill argues that the trial court erred by denying his motion to suppress because the police arrested him without probable cause.  Hill predicates his argument on the notion that when he exited his vehicle and the officers drew their weapons on him, handcuffed him, and patted him down, he had been illegally arrested.  Hill does not challenge whether the officers' initially stopping him was legal.  The State counters that the officers had reasonable suspicion to detain Hill in the manner they did because of how Hill and one of his passengers exited the vehicle and because Hill reached back toward his waistband—indicating he was reaching for a weapon.  We conclude that the officers' continued detention of Hill, including drawing their weapons, handcuffing him, and conducting a pat-down, was justified.

In a traffic stop situation, the police may ask for identification, a valid driver license, and proof of liability insurance.  *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  Police may check for outstanding warrants.  *Id.* at 245.  Police officers may also order the driver to get out of the vehicle.  *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977); *see also Diltz v. State*, 172 S.W.3d 681, 685 (Tex. App.—Eastland 2005, no pet.).  Further, as a general rule, officers may use such force as is reasonably

9

necessary to effect the goal of the stop—investigation, maintenance of the status quo, or officer safety. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894 (1997) (*citing United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587 (1989)). Under certain circumstances, the handcuffing of a vehicle's occupants may be appropriate to effectuate officer safety, such as when it is necessary to thwart a suspect's attempt to frustrate further inquiry. *See Rhodes*, 945 S.W.2d at 117.

During the course of a lawful traffic stop, an officer who develops reasonable suspicion that an occupant of the vehicle is engaged in, or will soon engage in, criminal activity may continue the detention of the occupants of the vehicle to investigate criminal activity beyond the scope of the law violation that formed the basis of the initial stop. *Sims v. State*, 98 S.W.3d 292, 295–96 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Estrada v. State*, 30 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd). The test for reasonable suspicion is a factual one and is made and reviewed by considering the totality of the circumstances at the time of the stop. *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, is, or soon will be engaged in illegal conduct. *Garcia v. State*, 43 S.W.3d 527,

10

530 (Tex. Crim. App. 2001). After making a stop for a traffic violation, an officer may rely on all the facts ascertained during the course of his contact with a detainee to develop articulable facts that would justify a continued detention. *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd), *cert. denied*, 529 U.S. 1116 (2000). Further, in forming reasonable suspicion to justify a continued detention, an officer may draw on his training and experience. *Estrada*, 30 S.W.3d at 603; *see also United States v. Cortez*, 449 U.S. 411, 421, 101 S. Ct. 690, 697 (1981).

In this case, Enright testified that he was initially suspicious of Hill's SUV because it stopped at a McDonald's but "no one got out to order food" before Hill's SUV drove off. Enright became more suspicious when Hill backed his SUV into a spot in another parking lot, stayed a few minutes, and then "started up again and began to exit the parking lot." Enright noticed that the SUV had unusually dark tint on its windows and believed that the windows were illegally tinted. He also observed Hill fail to signal during a turn—a traffic violation.

Alanis testified that—in his experience—as the officers conducted a stop for the traffic violations, Hill and the front passenger acted out of the ordinary by opening the doors and immediately exiting the SUV. Alanis further said that when Hill exited the vehicle, he "started reaching towards his shirt, kind of reaching under his shirt on his back, and that alerted me that maybe -- he was

11

probably reaching for a weapon, which is when I gave him a verbal command to see his hands." Hill's behavior prompted Alanis to draw his weapon. Enright also drew his weapon after seeing Alanis do the same. Alanis said that as soon as the officers determined that Hill did not have a weapon, the officers holstered their weapons and continued the traffic stop, which included determining whether there were other occupants of the SUV. Alanis said that "the tint and the interior of the cabin [were] pretty dark, so I couldn't see if anybody was back there." He eventually ascertained that two more passengers were in the back of the SUV, and he had them exit the SUV.

Viewing this evidence in a light most favorable to the trial court's denial of Hill's motion to suppress and assuming that the officers' detention of Hill was beyond the scope of the traffic infraction that formed the basis of the initial stop, we hold that under the totality of circumstances the officers in this case had reasonable suspicion to continue to detain Hill to investigate whether Hill was engaged in, or would soon engage in, criminal activity. *See Sims*, 98 S.W.3d at 295–96. We further hold that the officers' handcuffing of Hill was justified by their attempts to effectively provide for their own safety while they investigated their suspicions. *See Rhodes*, 945 S.W.2d at 117. We overrule this portion of Hill's first, second, and third points.

12

### 3. Evidence Found in Hill's SUV

In part of his first, second, and third points, Hill argues that the trial court erred by denying his motion to suppress because, according to Hill, the officers violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution, as well as article 38.23 of the Texas Code of Criminal Procedure, when they conducted a warrantless search of his SUV and seized contraband found inside. The State argues that the officers initially observed crack cocaine in plain view and were justified in seizing it. The State further argues that after having seized the crack cocaine and arresting Hill, they were justified in conducting a warrantless search of his SUV. We agree with the State.

### a. Plain View

The plain view doctrine involves no invasion of privacy. *See Texas v. Brown*, 460 U.S. 730, 738–39, 103 S. Ct. 1535, 1541 (1983); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). Thus, if an item is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Walter*, 28 S.W.3d at 541. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment. *See Illinois*

13

*v. Andreas*, 463 U.S. 765, 771, 103 S. Ct. 3319, 3324 (1983). An object is seized in plain view if three requirements are met. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). First, law enforcement officials must lawfully be where the object can be "plainly viewed." *Id*. (citing *Horton v. California*, 496 U.S. 128, 136, 110 S. Ct. 2301, 2311 (1990)). Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the officials. *Keehn*, 279 S.W.3d at 334. Third, the officials must have the right to access the object. *Id*. The second prong, the immediacy requirement, requires only a showing of probable cause that the item discovered is incriminating evidence; actual knowledge of the incriminating evidence is not required. *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991) (citing *Horton*, 496 U.S. at 136, 110 S. Ct. at 2311). "Probable cause merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband." *Miller v. State*, 686 S.W.2d 725, 728 (Tex. App.—San Antonio 1985, no pet.). An officer may rely on training and experience to draw inferences and make deductions as to the nature of the item seen. *Nichols v. State*, 886 S.W.2d 324, 325–26 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Officer Enright testified that when he approached Hill's SUV, the driver's side door was open because Hill had opened it when he exited. Enright said he

14

simply looked into the vehicle and observed a brown paper bag wedged between the driver's side seat and the center console. According to Enright, "[I]n that brown paper bag visible was a clear plastic [baggie] containing an off-white rock-like substance, which through my experience led me to believe it was crack cocaine." Alanis testified that Enright signaled to him that he could see illegal drugs in the SUV. Alanis said that Enright pointed to the front seat, and from Alanis's view, he could see "a brown paper bag that appeared to be semi-torn open. There was a clear plastic [baggie] container and you could see some off-colored -- off-white colored rocks. Looked like crack cocaine."

In this case, when the officers conducted the traffic stop and approached the SUV while investigating the traffic violations, they were legally in a position to see, in plain view, what was wedged between the seat and console. Both Enright and Alanis, based on their experience and training, immediately identified what they believed to be crack cocaine. Because the officers saw the crack cocaine in plain view, they lawfully seized it. We hold that the officers seized the crack cocaine found in Hill's SUV wedged between the driver's seat and center console under the plain view doctrine and that Hill's expectations of privacy under the Fourth Amendment or the Texas Constitution were not implicated.

15

Regarding the search of the vehicle that followed the officers' seizing the crack cocaine: the officers were certainly authorized to arrest Hill because the officers had probable cause to believe Hill had committed an offense within their view. Tex. Code Crim. Proc. Ann. art. 14.01 (Vernon 2005); *see also State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002). After that, the officers were justified in conducting a warrantless search of Hill's SUV because they had probable cause to believe that there was contraband located somewhere inside the vehicle. *See State v. Guzman*, 959 S.W.2d 631, 633–34 (Tex. Crim. App. 1998) ("[A] vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and *there is no requirement of exigent circumstances to justify such a warrantless search*.") (quoting *United States v. Johns*, 469 U.S. 478, 484, 105 S. Ct. 881, 902 (1985); *see also United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

### b. Hill's Reliance on *Arizona v. Gant*

During oral argument, Hill's counsel relied almost exclusively on the United States Supreme Court's recent decision in *Arizona v. Gant* for the proposition that the officers were not allowed to conduct a search — incident to

arrest—of Hill's vehicle. --- U.S. ----, 129 S. Ct. 1710, 1711 (2009). Hill's position seemed to be that because Hill posed no danger to the arresting officers, the search of his vehicle was illegal. The State did not dispute Hill's assertion that the police officers apprehended and placed handcuffs on him and removed him far enough away from his SUV that the officers could not have reasonably believed that he could reach a weapon or attempt to destroy evidence located within the vehicle. But Hill's reliance on *Gant* is misplaced.

To be sure, the facts underlying *Gant* share some similarity with those in the instant case, but they are sufficiently dissimilar and compel a different outcome than *Gant*. A review of the facts in *Gant* discloses that Gant had been arrested during the course of a narcotics investigation on an outstanding warrant for driving with a suspended license. *Id* at 1712. After Gant was arrested and secured in the back of an officer's patrol car, officers searched—incident to arrest—the vehicle that Gant had been driving. *Id*. Gant moved to suppress the firearm and the bag of cocaine the officers found "on the ground that the warrantless search violated the Fourth Amendment." *Id*. at 1715.

The Court's response to these facts was to absolutely transform the search-incident-to-arrest exception. *Id*. In assessing the reasonableness of the warrantless search, the Court held that "[i]f there is no possibility that an

17

arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id*. at 1716 (referring to the possibilities of an arrestee reaching a weapon or destructible evidence). In an attempt to resolve a circuit split and add clarity to the search-incident-to-arrest exception to the warrant requirement, the Court ruled that police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *See id*. at 1719, nn.2–3. But where the Court limited the search-incident-to-arrest exception concerning officer safety, it left intact, or even broadened, the exception with respect to officers' ability to gather evidence relevant to the crime of arrest. *Id*. at 1716. Indeed, the Court further held that "circumstances unique to the vehicle context [also] justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id*. at 1719 (quoting *Thornton v. United* States, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137 (2004) (Scalia, J., concurring in judgment)). In *Gant*, ultimately, the Court also determined that the challenged evidence in *Gant* did not meet the latter exception because "[a]n evidentiary basis for the search was also lacking." *Gant*, 129 S. Ct. at 1719. In other words, because Gant had been arrested for driving without a license,

there was no reasonable belief that evidence relevant to that crime might have been found in his vehicle.

Concerning the current case, this court agrees that under *Gant*, the officers would likely not have been justified in searching Hill's SUV in order to prevent him from reaching for a weapon or destroying evidence. But we disagree with Hill's conclusion that *Gant's* holding would render the officers' search per se unreasonable because the case before this court is readily distinguishable from *Gant*. Hill's conclusion relies on an unjustifiably narrow presentation of the circumstances of his arrest. It is apparently true that in this case, as in *Gant*, Hill no longer posed a risk to the officers when they conducted a search of his SUV. But unlike in *Gant*, the officers in this case arrested Hill for a crime involving narcotics, not upon the basis of the traffic violations that served as the officers' initial reason for stopping Hill. Because the officers reasonably believed that additional evidence would be found in Hill's SUV—due to the quantities and nature of the crack cocaine that had been seized in plain view—a search of Hill's SUV incident to his arrest comports with the Fourth Amendment. *See id*. at 1723 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."). Contrary to

19

Hill's contention, *Gant* supports the admission, rather than the suppression, of the contested evidence in this case. *Id*. We hold that the trial court did not err by overruling Hill's motion to suppress and overrule this portion of his first, second, and third points.

**B.    Relevancy of Photographs of a Gun Found in Hill's SUV**

In his tenth point, Hill argues that the trial court erred by overruling his objection to the admission of photographs of a gun that was found under the hood of Hill's SUV after he was arrested. The State argues that Hill waived this issue by not objecting to previous testimony regarding the discovery of the gun. The State further counters that evidence pertaining to the discovery of a gun under the hood of Hill's SUV "tended to make it more probable that [Hill] knowingly possessed the drugs and that he did so with an intent to sell them."

Even assuming the admission of the photographs of the gun was error, we conclude Hill has failed to preserve any error for appeal. To preserve error in admitting evidence, a party must make a proper objection and obtain a ruling on that objection. *See* Tex. R. App. P. 33.1. In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). An error in the admission of evidence is cured where the same evidence comes in elsewhere

20

without objection. *Ethington*, 819 S.W.2d at 858. Here, by Hill's own admission in his brief, "Several of the police witnesses testified (without objection) about a handgun being found under the hood of the SUV after the stop." As a result of this testimony, any potential error in the admission of the objected-to photos did not constitute reversible error. *See West v. State*, 121 S.W.3d 95, 104–05 (Tex. App.—Fort Worth 2003, pet. ref'd) ("If the same or similar evidence is admitted without objection at another point during the trial, the improper admission of the evidence will not constitute reversible error.").

Furthermore, had the error been preserved, we agree with the State that when considering the charges against Hill—possession with intent to distribute—the trial court did not abuse its discretion by deeming the photos relevant and allowing their admission into evidence.

The admission of evidence is a matter within the discretion of the trial court. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). Absent an abuse of discretion, we will not disturb a trial court's ruling on the admissibility of extraneous offense evidence. *Id*. As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion, and we must uphold the trial court's ruling. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Here, the trial court's allowing the admission of the photos depicting the gun found in Hill's SUV, discovered after he was arrested for possession with intent to distribute, fell within the zone of reasonable disagreement as to whether the evidence was relevant to the crime charged. *See Hawkins v. State*, 871 S.W.2d 539, 541 (Tex. App.—Fort Worth 1994, no pet.) (holding testimony regarding pistol found near defendant relevant to show defendant intended to protect narcotics); *see also Johnigan v. State*, 69 S.W.3d 749, 755–56 (Tex. App.—Tyler 2002, pet. ref'd) (holding possession of gun relevant to show control and dominion over cocaine); *Levario v. State*, 964 S.W.2d 290, 296–97 (Tex. App.—El Paso 1997, no pet.) (holding evidence of handgun admissible to show defendant's willingness to protect narcotics). We overrule Hill's tenth point.

### C. Comments Regarding Hill's Failure to Testify

In his seventeenth, eighteenth, and nineteenth points, Hill argues that the trial court erred by overruling his objection to comments made by the prosecutor during closing arguments, claiming they were improper comments on his decision not to testify at trial. The State counters that the comments made were simply not a comment on Hill's decision not to testify.

To determine if a prosecutor's comment constituted an impermissible reference to an accused's failure to testify, we must consider whether the

22

language used was manifestly intended or was of such a character that the jury would have naturally and necessarily considered it to be a comment on the defendant's failure to testify. *See Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). The offending language must be viewed from the jury's standpoint, and the implication that the comment referred to the accused's failure to testify must be clear. *Bustamante*, 48 S.W.3d at 765; *Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). A mere indirect or implied allusion to the defendant's failure to testify does not violate the accused's right to remain silent. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996).

The prosecutor's comments that Hill takes issue with are those the prosecutor made while explaining during closing argument that Hill must have "had a guilty conscience" because "when he sees these officers pulling up on him, I got to get out of this car because my dope is in here, I'm going to distance myself and he starts getting out." Shortly thereafter, the prosecutor stated that Hill and the front passenger exited the car "because they know what's in that car." The prosecutor then explained that the crack cocaine in

23

the front seat must have belonged to Hill: "You think he wouldn't put up a fight and say, Man, don't put your dope on me."

Hill does not explain how these comments are statements pertaining to his failure to testify, and we conclude that the language used by the prosecutor was not manifestly intended and not of such a character that the jury would have naturally and necessarily considered it to be a comment on Hill's failure to testify. *See* Tex. Code Crim. Proc. Ann. art. 38.08; *Bustamante*, 48 S.W.3d at 765; *Fuentes*, 991 S.W.2d at 275. From the jury's standpoint, it is unclear that the comment referred to Hill's failure to testify. *Bustamante*, 48 S.W.3d at 765; *Swallow*, 829 S.W.2d at 225. We overrule Hill's seventeenth, eighteenth, and nineteenth points.

### D. Ineffective Assistance of Counsel

In his remaining points, Hill argues that his trial counsel provided ineffective assistance of counsel because he failed to make specific objections to evidence admitted at trial; failed to obtain running objections on specific evidence; failed to file a written motion to suppress; and failed to object to comments made by the prosecutor during closing arguments. We hold that the record is insufficient to sustain Hill's points regarding any alleged ineffective assistance of counsel.

24

To establish ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind

25

trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

As a general rule, we do not speculate about trial counsel's strategy. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). We will not second guess through hindsight the strategy of counsel at trial. *Id*. In

the absence of direct evidence in the record of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Skeen v. State*, 96 S.W.3d 567, 580 (Tex. App.—Texarkana 2002, no pet.); *but cf. Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999) (reviewing courts are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all."). The challenged conduct will not, under the circumstances, constitute deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 441; *Thompson*, 9 S.W.3d at 814.

Claims of ineffective assistance of trial counsel, however, can be properly raised on appeal if the appellate record is sufficiently developed. *Robinson v. State*, 16 S.W.3d 808, 813, n.7 (Tex. Crim. App. 2000). But in most cases the trial record alone will be insufficient. *See Thompson*, 9 S.W.3d at 813. The record can be developed by a hearing on a motion for new trial based on a claim of ineffective assistance of counsel. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Hill urges that the instant record is sufficient to support his claim.

It should be noted that trial counsel's failure to file pretrial motions generally does not result in ineffective assistance of counsel. *Hayes v. State*, 484 S.W.2d 922, 925 (Tex. Crim. App. 1972); *Autry v. State*, 27 S.W.3d 177, 182 (Tex. App.—San Antonio 2000, pet. ref'd). Likewise, isolated instances of a failure to object to inadmissible argument or evidence does not necessarily render counsel ineffective. *Passmore v. State*, 617 S.W.2d 682, 686 (Tex. Crim. App. 1981), *overruled on other grounds by Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988); *Jordan v. State*, 859 S.W.2d 418, 421 (Tex. App.—Houston [1st Dist.] 1993, no pet.). And counsel is not necessarily deficient for failing to request an instruction on extraneous offenses. *Johnson v. State*, 629 S.W.2d 731, 736 (Tex. Crim. App. 1981). It is always possible that trial counsel does not wish to draw further attention to any extraneous offenses. *Id*. Where the record fails to reflect counsel's reasoning, we will presume he exercised reasonable professional judgment. *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd).

In this case, Hill fails to rebut the presumption that the actions of counsel were the result of a strategic or reasonable decision, because the record is silent as to why trial counsel made the decision that he made. *Romero v. State*, 34 S.W.3d 323, 327 (Tex. App.—San Antonio 2000, pet. ref'd); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

28

Because there was no motion for new trial addressing these alleged failures, there is only speculation that different conduct by trial counsel would have been beneficial to Hill. *Miranda v. State*, 993 S.W.2d 323, 327–28 (Tex. App.—Austin 1999, no pet.). We deem the record inadequate to make a fair evaluation of Hill's claims. We do note that Hill is not foreclosed from presenting his claim via a collateral attack by virtue of an application for post-conviction writ of habeas corpus. *Robinson*, 16 S.W.3d at 812–13; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). We overrule the remainder of Hill's points.

## IV. CONCLUSION

Having overruled each of Hill's points, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, MCCOY, and MEIER, JJ.

PUBLISH

DELIVERED: November 12, 2009

29