*1620-14*

ORIGINAL

No. 03-12-00809-CR

In The Court of Appeals
For The Third Court of Appeals District
Austin, Texas

Alejandro Muñoz,
Appellant

V.

The State of Texas,

Appelle

FILED IN
COURT OF CRIMINAL APPEALS

FEB 12 2015

Abel Acosta, Clerk

ON APPEAL FROM THE 22nd DISTRICT,
HAYS COUNTY, TEXAS TRIAL COURT
CAUSE NO. CR-11-0443

Petition For Discretionary Review
For Pro Se Appellant

Alejandro Muñoz
TDCJ No. 1818024
264 FM 3478
Huntsville, Texas 77320
Estelle Unit

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 11 2015

Abel Acosta, Clerk

# Oral Argument Requested

The Appellant respectfully request that oral argument be granted, based on Appellant Learning Disability.

## Notification to The Courts of Criminal Appeals

The Appellant, Alejandro Muñoz is unable to processed with his Petition for Discretionary Review. Though Petitioner, Alejandro Muñoz has many grounds for review. Appellant, Alejandro Muñoz has a Learning Disability to fully understand the format and information of the Petition for Discretionary Review. For example, not understanding the Legal terminology being used in order to file and process the Petition for Discretionary Review. Though the state and Court May disagree cause of the Appellant, Alejandro Muñoz higher education Knowledge having obtain an Associate's Degree from ITT Technical Institute. The Appellant, Alejandro Muñoz would like to state for the record. Just cause Appellant, Alejandro Muñoz has an higher education doe's not qualify my ability to file or understand fully the process or format especially the Legal terminology for the Petition for Discretionary Review.

The Appellant, Alejandro Muñoz would like to notify
The Court of Criminal Appeals. That the Appellant,
Alejandro Muñoz wishes to exercise his right
to file Article 11.07. The Appellant, Alejandro Muñoz
would like to thank the Court of Criminal Appeals
for its time at the matter at hand.

## Prayer For Relief

The Appellant, Alejandro Muñoz Prays that the
Honorable court would take considerstation
the information that I have presented on my
behalf.

Alejandro Muñoz
Petitioner, Pro Se

Texas Department of
Criminal Justice
Estelle Unit
TDCJ-ID #1818024
Huntsville, Texas 77320

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00809-CR

### Alejandro Munoz, Appellant

### v.

### The State of Texas, Appellee

### FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
### NO. CR-11-0443, THE HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## MEMORANDUM OPINION

A jury found appellant Alejandro Munoz guilty of six counts of aggravated sexual assault of a child for sexually abusing the nine-year-old son of his uncle's girlfriend.[1] *See* Tex. Penal Code § 22.021(a)(1)(B)(i), (iii). The trial court assessed appellant's punishment at confinement for 75 years in the Texas Department of Criminal Justice for each count, ordering the sentences to be served concurrently. *See id.* §§ 3.03(b)(2)(A), 12.32. In a single point of error on appeal, appellant

---

[1] The jury heard evidence that the mother of nine-year-old Z.R. dated appellant's uncle when Z.R. was in the third grade. During the course of the relationship, Z.R. met appellant, who was 23 years old and living with his uncle. On several occasions, Z.R. spent the weekend at the home of appellant's uncle, sleeping with appellant in his room. Z.R. testified that during those sleepovers, on multiple occasions, appellant "suck[ed] on [Z.R.'s] penis" and "put [appellant's] penis in [Z.R.'s] butt" inside the hole. Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not further recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

asserts that his trial counsel rendered ineffective assistance. We affirm the trial court's judgments of conviction.

## DISCUSSION

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance—that is, we must presume that trial counsel's decisions were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 686; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see Nava*, 415 S.W.3d at 307–08 ("courts indulge in a strong presumption that counsel's conduct was *not* deficient"). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively

2

demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308; *see Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

Appellant complains of multiple alleged actions or inactions on the part of his trial counsel, including failing to object to the admission of evidence, failing to have particular items of evidence with him at trial, "curing" an error by the State, failing to request a limiting instruction, failing to request a presentence investigation or expert evaluation, and failing to advise appellant about the appellate process. After reviewing appellant's complaints, we conclude that the present record fails to demonstrate that his trial counsel rendered ineffective assistance of counsel.

Appellant criticizes his attorney for failing to object to the admission of certain evidence: the written statement of Z.R.'s mother detailing his outcry to her of the sexual abuse (State's Exhibit #3), a notebook containing appellant's writings (State's Exhibit #4), two notes Z.R. wrote to his mother when he disclosed appellant's sexual abuse of him (State's Exhibits #1 and #2), the video recording of Z.R.'s forensic interview at the children's advocacy center (State's Exhibit #15), the video recording of the detective's interview of Z.R.'s mother (State's Exhibit #16), and testimony from Melissa Rodriguez, the program director of the local children's advocacy center,

3

who appellant contends was not qualified to testify as an expert. These failures to object do not demonstrate deficient performance by counsel.

First, several of these failures to object do not constitute deficient performance because the complained-of evidence was not objectionable. For example, appellant complains about trial counsel's failure to object on hearsay grounds to State's Exhibit #2, one of the "letters that the alleged victim gave to his mother the day that he made the outcry of sexual abuse." However, when a defendant is charged with certain offenses against a child under the age of 14, including aggravated sexual assault of a child, article 38.072 of the Code of Criminal Procedure (commonly referred to as the outcry statute) creates a hearsay exception for a child-complainant's out-of-court "statements" that "describe the alleged offense," so long as those statements were made "to the first [adult] person . . . to whom the child . . . made a statement about the offense" and the procedural requirements of the statute are met. *See* Tex. Code Crim. Proc. art. 38.072, § 2(a)(1)–(3); *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). "A 'statement' is an oral or written verbal expression." Tex. R. Evid. 801(a). Here, State's Exhibit #2 was Z.R.'s written verbal expression describing the alleged offenses that Z.R. made to his mother, the first adult to whom Z.R. disclosed the abuse, during his outcry of the abuse. Thus, this handwritten note was admissible under the outcry statute's hearsay exception, and counsel was not deficient in failing to assert a hearsay objection.

In addition, although appellant summarily asserts that Rodriguez's testimony was objectionable because she was "not properly qualified to testify as an expert witness," he fails to explain how her qualifications fall short. We note that, contrary to appellant's assertions, the record

4

reflects that Rodriguez was qualified as an expert.[2] *See* Tex. R. Evid. 702 ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."); *Jessop v. State*, 368 S.W.3d 653, 689–90 (Tex. App.—Austin 2012, no pet.) ("To be qualified to give expert opinion testimony, the witness 'must possess some additional knowledge or expertise beyond that possessed by the average person, but the gap need not necessarily be monumental.'" (quoting *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010))). Thus, counsel was not deficient in failing to object to Rodriguez's testimony based on her purported lack of qualifications.[3]

Second, the complained-of failures to object to particular evidence might well have been trial strategy on the part of counsel. The record demonstrates that part of the defense strategy was to emphasize inconsistencies between the various statements Z.R. and his mother made, particularly discrepancies in the dates of the alleged abuse and Z.R.'s outcry, as well as Z.R.'s inability to recall details relating to the alleged abuse. Thus, counsel could very well have permitted

---

[2] The record demonstrates that Rodriguez was qualified as an expert based on her education, training, and experience. She obtained a bachelor's degree in sociology, a master's degree in counseling, and completed hundreds of continuing education hours specifically relating to child abuse. She is a forensic interviewer with over 15 years of experience and has conducted more than 1,000 forensic interviews of children. In her capacity as the program director of the children's advocacy center, she works with various agencies—including law enforcement and child protective services—involved in the multidisciplinary team that conducts child-abuse investigations and provides services to child-abuse victims. Further, Rodriguez previously testified as a child-abuse expert on several occasions.

[3] We also note that trial counsel utilized Rodriguez's expertise on appellant's behalf during his cross-examination to demonstrate that certain conduct by appellant was equally consistent with not sexually abusing a child. Taking advantage of her expertise in this manner would be a reasonable trial strategy and might be an explanation for not objecting to her purported lack of qualifications.

5

the admission of otherwise inadmissible hearsay statements (one of Z.R.'s hand-written notes,[4] the written statement of Z.R.'s mother, the video recording of Z.R.'s forensic interview, and the video recording of the interview of Z.R.'s mother) because he wanted them in evidence in order to demonstrate those inconsistencies and deficiencies. For example, in attempting to impeach Z.R.'s mother with inconsistencies in her various statements, counsel cross-examined her using her written statement. As for counsel's failure to object to appellant's notebook (State's Exhibit #4), or the writings contained therein, we note that the portions about which appellant now complains—song lyrics "suggesting that the Appellant was involved in gang activity"—are at best a mere implication that appellant was or wanted to be part of a gang. As other portions of the notebook were clearly admissible—in particular, the lyrics of a song entitled "[Z.] Song," about a nine-year-old boy showing "a grown man" appellant's age "the meaning of life," *see* Tex. Code Crim. Proc. art. 38.37, § 1(b) (evidence bearing on relevant matters, including state of mind of defendant, admissible in prosecution of certain offenses committed against children)—counsel could very well have determined that objecting, and thereby drawing attention to evidence that was merely suggestive of possible gang affiliation, might result in overly emphasizing the writings contained in the notebook.

---

[4] The record contains two handwritten notes that Z.R. gave to his mother during his outcry. The first expresses his fear about moving to a new house near appellant's home and having contact with appellant; the second details the acts of sexual abuse appellant perpetrated against him.

Counsel might also have determined that, given the state of the evidence,[5] the mere implication of gang affiliation was not detrimental to the defense.

Appellant also asserts that his counsel's performance was deficient because he "did not have copies of key evidence with him at trial, even though all of the evidence was provided to him through the discovery process." However, claims of deficient performance must be affirmatively demonstrated in the record. *See Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) ("[C]ounsel's alleged deficiency must be affirmatively demonstrated in the trial record."). This assertion is not. As proof of this deficient performance, appellant relies on the fact that his trial counsel requested a copy of State's Exhibit #3, the written statement of Z.R.'s mother, from the trial court during trial. However, the record also reflects that although the State provided the requisite notice and summary of the outcry statement to counsel, *see* Tex. Code Crim. Proc. art. 38.072, § 2(b), the document itself had not been previously tendered to counsel. Thus, counsel could not have been deficient for "failing" to have a document with him at trial that was never in his possession. Appellant attempts to further demonstrate this failure to have key evidence by asserting that trial counsel did not have a copy of the search warrant for appellant's uncle's house that counsel at one point contemplated offering into evidence. However, the record does not actually demonstrate that counsel did not have a copy of the search warrant with him at trial. Rather, the record simply demonstrates that counsel wanted to offer into evidence the copy of the search warrant that the

---

[5] We note that the record otherwise demonstrates that appellant did not have any characteristics typically associated with gang membership, nor was any affiliation with gang members shown. Moreover, the complained-of song lyrics were in no way emphasized (or even mentioned) during trial. Only the lyrics on the two pages of "[Z.] Song" were discussed during questioning and referenced during argument.

7

testifying officer had with him in court. Counsel may simply have preferred to offer the officer's copy of the document since he was the officer who obtained the search warrant.

Appellant next complains about his counsel's "curing" the State's error (failing to have Z.R. identify appellant in open court) when counsel had Z.R. identify appellant during cross-examination. This complaint presupposes there was error to cure. The prosecutor could very well have been waiting until redirect to have Z.R. identify appellant.[6] Anticipating such, trial counsel could have been acting preemptively to avoid having the last testimony the jury heard from Z.R., the last witness for the State, be his in-court identification of appellant as the individual who perpetrated multiple acts of sexual abuse against him.

Appellant also contends that his trial counsel was deficient in failing to request a limiting instruction regarding "the abundance of testimony admitted regarding the alleged child pornography that was in Appellant's possession." While it is true that a limiting instruction concerning the limited admissibility of extraneous-conduct evidence must be requested at the time of the admission of the evidence, *see Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007) ("[A] defendant is entitled to limiting instructions on the use of extraneous offenses during the guilt phase only if he timely requests those instructions when the evidence is first introduced."); *see also Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008) ("A failure to request a limiting instruction at the time evidence is presented renders the evidence admissible for all purposes and

---

[6] As the State notes in its brief, this is not an uncommon trial tactic of prosecutors in these types of cases because it "dramatizes the moment and leaves a lasting impression on the jury."

8

relieves the trial judge of any obligation to include a limiting instruction in the jury charge."), counsel could very well have not requested such an instruction for several reasons.

First, contrary to appellant's reference to the "abundance of testimony" about child pornography, the actual evidence at trial did not include any evidence that appellant had child pornography in his possession. *See* Tex. Penal Code §§ 43.25(a)(1) (setting forth offense of possession of child pornography as possession of "visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct"), .25(a)(2) (defining sexual conduct as "sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola"). According to Z.R.'s testimony, appellant showed Z.R. "not very many" pictures of little boys on his laptop. The pictures made Z.R. "feel uncomfortable" because the boys were in their underwear "posing," although Z.R. could not explain what he meant by posing. Z.R. testified that he could not see any private parts in the pictures. Similarly, in the video recording of Z.R.'s forensic interview at the children's advocacy center, Z.R. says that appellant showed him pictures on the computer of kids, mostly boys, "butt naked" in "poses." Beyond this general description, he does not provide any details of the photographs. This evidence not constitute evidence of child pornography. At best, this evidence demonstrates that appellant showed Z.R. some arguably sexually suggestive photographs. Trial counsel could very well have decided not to draw attention to this evidence, and perhaps thereby highlight the suspicious nature of it, by requesting a limiting instruction. Moreover, counsel maintained that there was no evidence demonstrating that appellant

9

possessed any child pornography. Thus, counsel could have felt that requesting a limiting instruction on the complained-of evidence would appear to concede the existence of child pornography and appellant's possession of such, or at least undermine or weaken the defense position that there was no evidence of child pornography.

Further, counsel may not have objected to this evidence because he deemed such evidence to be unobjectionable in that it was admissible as evidence of extraneous misconduct under Rule 404(b). *See* Tex. R. Evid. 404(b) (excluding evidence of extraneous bad acts used to prove bad character but allowing admission of such evidence for some other purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). There was testimony at trial about the behaviors that sex offenders engage in, including showing a victim child pornography, that are part of the "grooming" process. *See Morris v. State*, 361 S.W.3d 649, 667–69 (Tex. Crim. App. 2011) (phenomenon of grooming of children for sexual molestation is legitimate subject of expert testimony). Thus, evidence of appellant showing Z.R. sexually suggestive photographs could constitute evidence of the grooming process appellant engaged in with Z.R. As such, the evidence was admissible under Rule 404(b) to show appellant's preparation. *See Sandoval v. State*, 409 S.W.3d 259, 300 (Tex. App.—Austin 2013, no pet.) ("The 'preparation' or 'plan' exception allows admission of evidence to show steps taken by the defendant in preparation for the charged offense." (citing *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005))).

In this case, appellant elected to have the trial court assess his punishment after submitting the issue of guilt to a jury. Appellant next maintains that his trial counsel was deficient

10

in not requesting that a presentence investigation (PSI) be conducted or that an expert evaluate appellant prior to the punishment hearing. First, as appellant concedes in his brief, appellant was not entitled to have a PSI conducted in the instant case because the jury convicted him of multiple counts of aggravated sexual assault of a child, and thus he was not eligible for community supervision. *See* Tex. Code Crim. Proc. art. 42.12, §§ 3g(a)(1)(E) (limitations on judge-ordered community supervision prohibit judge from granting community supervision if defendant adjudged guilty of aggravated sexual assault), 9(g)(3) (mandated PSI not required if only available punishment is imprisonment). Second, although appellant asserts that a PSI "would have been extremely beneficial" because the trial court would have "a thorough investigation . . . regarding [appellant's] background, education, lack of criminal history, and any other mitigating evidence," this is pure speculation. It is equally possible that such information, or other information gathered during the PSI, would have been detrimental to appellant. Concerning the expert evaluation, appellant does not identify what type of expert should have evaluated appellant (presumably he means an expert in sex-offender treatment) but simply asserts that it would have been "strategic" to have appellant evaluated regarding his likelihood to reoffend. Again, this assertion assumes that such an evaluation would demonstrate that appellant was a low risk for recidivism as opposed to a high risk. Moreover, we also note that trial counsel in this case was retained. Therefore, a request for a court-appointed expert to evaluate appellant would not appear in the record. Retained trial counsel could very well have consulted an expert or even had appellant evaluated. This is yet another claim of deficient performance not affirmatively demonstrated in the record. *See Villa*, 417 S.W.3d at 463.

11

Finally, appellant asserts that trial counsel was deficient because he "did not effectively advise [appellant] on his rights regarding the appellate process." As proof of this deficiency, appellant notes that appellant filed a pro se notice of appeal and that the record does not reflect that retained counsel withdrew as counsel of record. However, it is not uncommon for trial counsel to have the defendant sign the notice of appeal when counsel knows he will not be representing the defendant on appeal to avoid becoming counsel of record on appeal. *See* Tex. R. App. P. 6.1(a) ("Unless another attorney is designated, lead counsel for an appellant is the attorney whose signature first appears on the notice of appeal."). Moreover, the pro se notice of appeal filed in this case was a typed document, not a hand-written letter, that contains language typically found in notices of appeal drafted by attorneys, including a certificate of service. This suggests that trial counsel prepared the notice of appeal for appellant to sign, which would indicate that counsel did discuss the appeal with appellant. Further, the fact that trial counsel did not formally withdraw from the case is not demonstrative of anything, as counsel was retained. While perhaps preferable for counsel to do so, the obligation to withdraw as counsel of record stems from the statute governing the appointment of counsel for indigent defendants. *See* Tex. Code Crim. Proc. art. 26.04(j). Regardless, what counsel advised appellant about his right to appeal and the appeal process—or that counsel failed to advise him of such—is not reflected in the record before us. Thus, once again, appellant's claim of deficient performance is not affirmatively demonstrated in the record. *See Villa*, 417 S.W.3d at 463.

As additional proof of deficient performance, appellant cites several comments the prosecutor made during the course of trial about the conduct or strategy of appellant's trial counsel.

12

However, contrary to appellant's contention, such comments do not "clearly exemplif[y] [appellant's] trial counsel['s] complete lack of strategic or tactical decision-making." Rather, such comments demonstrate, at most, that the prosecutor disagreed with her opponent's trial tactics. The mere fact that another attorney might have pursued a different course of action at trial does not suffice to prove a claim of ineffective assistance of counsel. *Tretter v. State*, No. 03-12-00034-CR, 2014 WL 3893016, at *6 (Tex. App.—Austin Aug. 7, 2014, pet. ref'd, untimely filed) (mem. op., not designated for publication); *Harris v. State*, 125 S.W.3d 45, 54 (Tex. App.—Austin 2003, pet. ref'd, untimely filed); *see Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012), *cert. denied*, --- U.S. ----, 133 S.Ct. 834 (2013).

In this case, appellant did not file a motion for new trial. Thus, the record is silent as to whether there was a strategic reason for counsel's alleged conduct about which appellant complains. Appellant's assertions such as "there [was] no absolutely no plausible trial strategy" and "there [was] no reasonable trial strategy" for the alleged deficiencies are mere speculation. Such speculation does not constitute a demonstration, founded in the record, that no reasonable trial strategy existed. *See Lopez*, 343 S.W.3d at 142 ("[C]ounsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation."); *see also Villa*, 417 S.W.3d at 463.

Appellant's trial counsel was not afforded an opportunity to explain his reasons for the complained-of conduct. Absent record evidence regarding counsel's strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd); *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin

13

1998, pet. ref'd); *see also Lopez*, 343 S.W.3d at 143. Appellant has failed to rebut the strong presumption of reasonable assistance because without explanation for trial counsel's decisions, the complained-of conduct does not compel a conclusion that trial counsel's performance was deficient. We cannot say that "no reasonable trial strategy could justify" counsel's decision to engage in the complained-of conduct. *See Lopez*, 343 S.W.3d at 143. Nor can we conclude that counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 592. Accordingly, we hold that appellant has failed to demonstrate deficient performance on the part of his trial counsel. *See Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'").

Because appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong—prejudice. *See Lopez*, 343 S.W.3d at 144; *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). Nevertheless, we would also conclude that appellant failed to demonstrate that he suffered prejudice.

Even if an appellant shows that particular errors of counsel were unreasonable, he must further show that they actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693–95; *Cochran v. State*, 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.). It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during

14

trial were of questionable competence. *Lopez*, 343 S.W.3d at 142–43. Further, merely showing that the errors had some conceivable effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). The appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by a portion of the trial, denied him a fair trial. *Strickland*, 466 U.S. at 695.

In his argument regarding prejudice, appellant summarily asserts that "[h]ad [appellant's] trial counsel made proper objections, there is a reasonable probability that the jury would not have found [him] guilty" because, according to appellant, this case relied solely on the credibility of Z.R. and his mother since there was no evidence corroborating the allegations, and the admission of the evidence to which counsel did not object improperly bolstered their credibility. Appellant further asserts that "[t]here is also a reasonable probability that if [appellant's] trial counsel had presented any beneficial evidence during punishment for the trial court to consider that [appellant's] sentence could have been less severe." These assertions are speculative claims without support in the record.

Appellant maintains that "the present case presents in compelling terms 'a breakdown in the adversarial process that our system counts on to produce just results.'" We disagree. During voir dire, trial counsel questioned the jury panel regarding their ability to serve on the jury: he discussed important legal concepts such as appellant's Fifth Amendment right not to testify; he explored possible bias or preconceptions relating to homosexuality and sexual orientation; he discussed issues factually relevant to the case such as child development and differing perceptions of children as well as misconceptions concerning child molestation; he asked the jurors their views

15

regarding homosexuality and child molestation; he discussed witness credibility and how to assess it; and he successfully challenged several panel members for cause. Further, the record shows that counsel presented and developed a defense strategy of asserting a false accusation as evidenced by inconsistent statements, Z.R.'s inability to recall details, and the lack of corroborating evidence. In support of this defense, trial counsel emphasized, through cross-examination of the State's witnesses and in jury argument, the discrepancies in the various statements given by Z.R. and his mother and the deficiencies in the police investigation. During his closing argument, trial counsel discussed Z.R.'s inability to recall specific details associated with the abuse and Z.R.'s behaviors that were inconsistent with having been sexually abused. Counsel also provided alternative explanations for evidence possibly corroborating Z.R.'s allegation of abuse (such as appellant's writings) and reminded the jury that even though there was mention of child pornography there was no evidence of appellant's possession of such.

An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias*, 392 S.W.3d at 653. The record in this case reveals that counsel's trial strategy was to focus on the inconsistencies of the statements given by Z.R. and his mother, the lack of corroborating evidence, the inadequate police investigation, and a possible motive for Z.R. and his mother to fabricate the allegations. The fact that this strategy ultimately proved unsuccessful does not render counsel's assistance ineffective. On the record before us, appellant has failed to demonstrate deficient performance on the part of his trial counsel or that he suffered prejudice because of the alleged errors

16

of counsel. Thus, he has not shown himself entitled to reversal based on ineffective assistance of counsel. We overrule appellant's sole point of error.

## CONCLUSION

Having overruled appellant's sole point of error, we affirm the trial court's judgments of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: November 14, 2014

Do Not Publish

17