Affirmed and Memorandum Opinion filed February 15, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01007-CR

___________________

 

Joshua Deon Lamb, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 174th District Court

Harris County,
Texas



Trial Court Cause No. 1237911

 



 

 

MEMORANDUM OPINION

A jury found appellant Joshua Deon Lamb guilty of murder
and sentenced him to life imprisonment.  Lamb appeals his conviction contending
that: (1) the evidence at trial is legally and factually insufficient to
support a guilty verdict; (2) he received ineffective assistance of counsel;
(3) the trial court erred in charging the jury on the law of parties, and (4)
the State argued outside the record during closing argument.  We affirm.  


I

Joshua Deon Lamb was
convicted of murdering Tedrick Carter in the early morning hours of May 15,
2008, following a confrontation outside the home of Carter’s friend, Brandon
Espree.  The record reflects that Carter, for the most part, lived with Espree
and Espree’s family.  Espree was awakened around 3 a.m. when he heard Carter
open the front door and begin arguing with someone outside.  Espree looked out
a window and saw Carter standing half-way down the driveway arguing with
someone standing at the end of the driveway.  Espree then went outside and
stood at Carter’s side and about ten yards away from the man arguing with
Carter.  Espree identified the man as Lamb, whom he knew from high school. 
Espree testified that Lamb was wearing a red “Dickie suit” and was telling
Carter to join him in the street.  Espree further testified that three
additional men were standing outside a green Buick and a red sedan parked in
the street in front of the house next door.  

Espree testified he grabbed
Carter and began pulling him back toward the house.  As Espree turned to open
the garage door, he heard a gunshot.  He testified that, upon turning around, he
saw one of the men near the cars fire a shot and then saw Lamb fire several
shots from the middle of the street while moving toward the cars.  Espree and
Carter ran into the garage and realized Carter had been hit.  Espree
immediately called 911 as the shooters fled.  

Crime-scene investigators
with the Harris County Sheriff’s Office collected three groupings of 23 fired
shell casings and a red bandana from the scene.  Investigators determined the
shells had been fired from at least two different guns.  Sergeant Mark
Reynolds, a homicide investigator with the sheriff’s office, testified the
three groupings were consistent with a shooter standing at the end of the
driveway and backing away as he fired and a separate shooter firing from the
area Espree testified the two cars had been parked.  

Investigators also recovered
Carter’s cell phone from his pocket and enlisted Steve Lowenstein, an inspector
with the United States Marshals Service, to analyze the call records.  It was
determined that Lamb and Carter exchanged several brief phone calls shortly
before the shooting.  Lamb first called Carter at 2:51 a.m., with additional
calls following at 2:58, 3:00, 3:06, 3:36, and 3:39.  Espree called 911 at 3:43
a.m., and no additional calls between Lamb and Carter followed.  Inspector
Lowenstein was able to track the movements of Lamb’s cell phone during these
calls by examining the cell towers used by the phone.  He determined that up
until 3:20 a.m., Lamb’s phone was in the area of his apartment but moved from
his apartment to the area of Carter’s home in the 15 minutes immediately before
the shooting.  By 3:50 a.m., roughly seven minutes after the shooting, Lamb’s
phone had returned to the area of his apartment.  The phone was never used
again after that morning.  

Lamb’s girlfriend, Sheree
Green, provided extensive testimony implicating Lamb.  Green testified that on the
morning of the murder she was with Lamb and three of his friends—“Low,” “A-1,”
and an unknown man—at an apartment she rented for Lamb.  The group was playing
games and smoking marijuana.  In the early morning hours, the three men decided
to leave to buy more marijuana.  Green testified Carter was known to sell
marijuana.  She further testified that Lamb received a phone call that morning
and argued with the caller.  Immediately after the phone call, Green testified
Lamb got dressed in a red “Dickie outfit,” grabbed his gun, and left the
apartment with the three friends.  Green did not know what car they left in but
testified a red Impala owned by “Low” was parked at the complex that night.  

Green testified that when
the men later returned to the apartment and resumed smoking marijuana, Lamb was
unusually “jittery.”  Green testified Lamb asked to make a call on her cell
phone, which he did not normally do.  Green did not hear the conversation that
ensued, if any.  Police later determined Carter’s cell phone had two missed
calls from Green’s phone at 4:05 a.m. and 4:18 a.m.  

Green testified that the
next day Lamb told her without explanation that he had thrown away all of his
phones.  Later that day, “Low” picked up Green from work and drove her to
Lamb’s apartment to gather her belongings.  Someone then dropped her off at a
bus station, from which she traveled to Dallas and stayed with her mother. 
Green did not testify as to her reason for going to Dallas but did testify it
was not her decision to do so.  She would return to Houston several days later
after a homicide detective contacted her.  Green gave the detective a
statement, after which she testified Lamb told her to stop talking to the
police.  Green further testified that Lamb told her about a month before trial
to not show up.  

The jury convicted Lamb of
murder and the trial judge sentenced him to life imprisonment.  This appeal
followed.  On appeal, Lamb complains that: (1) the evidence is legally and
factually insufficient to support a verdict of guilty beyond a reasonable
doubt; (2) he received ineffective assistance of counsel because his attorney
failed to secure his election to have the judge determine sentencing, failed to
secure rulings on two filed motions in limine, and failed to object when the
State argued outside of the record on closing argument; (3) the trial court
improperly charged the jury on the law of parties, and (4) the State improperly
argued outside the record during closing argument.  We affirm.  

II

Lamb first complains that
the evidence against him is legally and factually insufficient to support a
finding of guilty beyond a reasonable doubt.  In evaluating the legal
sufficiency of the evidence to support a criminal conviction, we view all
evidence in the light most favorable to the verdict and determine whether a
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Childs
v. State, 21 S.W.3d 631, 634 (Tex. App.—Houston [14th Dist.] 2000, pet.
ref’d).  We give deference to “‘the responsibility of the trier of fact to
fairly resolve conflicts in testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.’”  Hooper, 214
S.W.3d at 13 (quoting Jackson, 443 U.S. at 318–19).  The jury is the
exclusive judge of the credibility of the witnesses and of the weight to be
given their testimony, and it is the exclusive province of the jury to
reconcile conflicts in the evidence.  Mosley v. State, 983 S.W.2d 249,
254 (Tex. Crim. App. 1998).  Hence, we do not reevaluate the weight and
credibility of all the evidence or substitute our judgment for the fact finder’s. 
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  Appellate
courts merely ensure that the jury’s decision was rational.  Muniz v. State,
851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d
775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d). 

A majority of the judges on
the Court of Criminal Appeals have determined that the Jackson v. Virginia
legal-sufficiency standard is the only standard a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.  Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)
(plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran,
J.J.); id. at 926 (Cochran, J., concurring, joined by Womack, J.) (same
conclusion as plurality).  Accordingly, we will analyze Lamb’s
factual-sufficiency issue under the Jackson v. Virginia standard and ask
only if the evidence against him was legally sufficient to sustain a verdict of
guilty beyond a reasonable doubt.  See id. at 912 (plurality op.); Pomier
v. State, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no
pet.).  

Sufficient evidence was
presented from which a rational jury could draw the conclusion that Lamb was
guilty beyond a reasonable doubt.  See Muniz, 851 S.W.2d at 246.  Espree
testified he identified Lamb as one of the shooters while he was standing next
to Carter and roughly ten yards away from Lamb.  Espree testified he knew who
Lamb was from high school and later identified him in a pictorial lineup as one
of the shooters.  It is well-established that the testimony of a single
eyewitness may be legally sufficient to support conviction.  Davis v. State,
177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Aguilar
v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)).  Furthermore, Green’s
testimony as to Lamb’s whereabouts on the night of the shooting and evidence
showing Lamb’s cell phone traveled from the area around his apartment to
Espree’s home and back again in conjunction with the timeline of the shooting
corroborated Espree’s identification of Lamb as a shooter.  Both Espree and Green
testified Lamb was wearing a red “Dickie suit” on the night of the shooting,
and Green testified Lamb was “jittery” after returning to his apartment after
the shooting occurred and disposed of all his cell phones. 

Lamb complains that Espree
and Green were both incredible witnesses.  On cross-examination, Espree was
confronted with his initial statements to police at the murder scene that he
did not recognize any of the men who confronted and shot at Carter, describing
them only as “dark-skinned males.”  Additionally, Espree testified he told the
911 dispatcher he could not see who shot Carter.  Espree explained, “I wasn’t
in my right mind at the time,” and “I was just trying to get them in the area
for the ambulance.”  After being taken to a police station for questioning,
Espree provided a written statement in which he described the men and the
vehicles at the murder scene and said he “believed” the man wearing the “Dickie
suit” was Lamb.  A week later, in a third statement to police, Espree stated he
felt “for sure with a little more certainty” that Lamb was one of the
shooters.  Lamb also points out that Espree lied to police about handling a
gun, as shown by a positive gunshot-residue test, and that a neighbor witnessed
Espree with a gun during the shooting.  As to Green, Lamb argues she was
“clearly biased” because of her anger toward Lamb after she learned he was
seeing another woman.  

The jury’s role as trier of
fact renders it the sole judge of the credibility of the witnesses and strength
of their testimony.  See Fuentes v. State, 991 S.W.2d 267, 271 (Tex.
Crim. App. 1999).  The jury was made aware Espree did not immediately identify
Lamb, and defense counsel had ample opportunity to cross-examine Espree
regarding his delayed identification.  The jury was also free to take into
account Green’s relationship with Lamb and any motivation she might have to
lie.  We do not reevaluate the weight and credibility of all the evidence or
substitute our judgment for the fact finder’s.  See Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991); Losada v. State, 721 S.W.2d 305,
309 (Tex. Crim. App. 1986).  The evidence presented at trial was sufficient for
a rational jury to find Lamb guilty beyond a reasonable doubt.  See Muniz,
851 S.W.2d at 246.  Lamb’s first issue is overruled.  

III

Lamb next complains that he
received ineffective assistance of counsel.  Lamb complains his representation
was ineffective because counsel (1) failed to know and apply the current law
regarding sentencing election, resulting in the trial court rather than the
jury assessing punishment in contravention of Lamb’s wishes, (2) failed to
secure rulings from the trial court on two filed motions in limine, and (3)
failed to object when the State allegedly argued outside the record during
closing argument.  

An accused is entitled to
reasonably effective assistance of counsel.  Strickland v. Washington,
466 U.S. 668, 686 (1984); King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  In reviewing claims of ineffective assistance of counsel, we apply
a two-prong test.  See Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005) (citing Strickland, 466 U.S. at 687).  To establish
ineffective assistance, an appellant must prove by a preponderance of the
evidence that (1) his trial counsel’s representation fell below an objective
standard of reasonableness, and (2) there is a reasonable probability that, but
for counsel’s deficient performance, the result of the trial would have been
different.  Strickland, 466 U.S. at 687; Mallett v. State, 65
S.W.3d 59, 62–63 (Tex. Crim. App. 2001)  If a criminal defendant can prove that
trial counsel’s performance was deficient, he must still affirmatively prove
that counsel’s actions prejudiced him.  Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999).  To demonstrate prejudice, a defendant must
establish a reasonable probability that the result of the proceeding would have
been different if trial counsel had acted professionally.  Id.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Mallett, 65 S.W.3d at 63.

When evaluating a claim of
ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  In making such an evaluation, any judicial review must be
highly deferential to trial counsel and avoid the distorting effects of
hindsight.  Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)
(citing Strickland, 466 U.S. at 689).  As such, there is a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.  Salinas, 163 S.W.3d at 740.  The appellant bears the
burden of proving by a preponderance of the evidence that counsel was
ineffective.  Thompson, 9 S.W.3d at 813 (citing Cannon v. State,
668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).  To overcome the presumption of
reasonable professional assistance, any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Id. at 814.  Direct appeal is usually an
inadequate vehicle for raising such a claim because the record is generally
undeveloped.  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App.
2005).  When the record is silent as to trial counsel’s strategy, we will not
conclude that defense counsel’s assistance was ineffective unless the
challenged conduct was “‘so outrageous that no competent attorney would have
engaged in it.’”  Id. (quoting Garcia v. State, 57 S.W.3d 436,
440 (Tex. Crim. App. 2001)).  

We address, in turn, each of
Lamb’s complaints against his counsel.  Lamb first contends his counsel was
ineffective because counsel failed to timely file Lamb’s election to be
sentenced by the trial court.  Months before trial and on the day trial began, Lamb’s
counsel filed motions electing sentencing by the jury.  After the jury returned
a “guilty” verdict, counsel attempted to change the sentencing election to have
the judge assess punishment.  The State objected on the grounds that a
defendant may only change his election after a guilty verdict is returned with
consent from the prosecutor, who did not agree to the change.  See Tex.
Code Crim. Proc. art. 37.07, § 2(b).  Defense counsel then made the following
statement on the record:

As the State and Court are aware, Mr. Lamb advised me as
early as Monday of this week that if he were found guilty of the offense of
murder, that he would like to have the Court assess punishment.  It was my
understanding that he could make that election at any time, so I advised them
that we would wait and see, if in fact, there was a guilty verdict returned in
this case.  I was unaware of the apparent change in the law. Therefore, so I
improperly advised Mr. Lamb in regards to whether or not he should or should
not make such an election.  As a matter of fact, he wanted me to come up and
make it and I told him: We’ll just have to wait until the verdict is returned.
At least if my reading of the statute is correct as it appears, it’s the same
as the Court’s reading of the election, that that [sic] election should have
been made before this jury returned a verdict of guilty in this case . . . . So
it would appear that if, in fact, the Court rules in favor of the State, that
the fault for the election not being changed falls on my shoulders.

Counsel’s admission that he was unaware of
the current state of the law regarding sentencing election rebuts the
presumption that defense counsel acted reasonably.  See Salinas, 163
S.W.3d at 740.  Furthermore, counsel’s admitted failure to know and apply the
current law regarding sentencing election fell below the standard of prevailing
professional norms.  See Strickland, 466 U.S. at 688.  However, Strickland
also requires an appellant establish a reasonable probability that, but for
counsel’s deficiency, the result of the trial would have been different.  Id.
at 694.  Lamb has not fulfilled this requirement.  

            The jury imposed a sentence of
life imprisonment.  Lamb acknowledges he “can’t guess about Judge Guerrero’s
decision about punishment that day” but suggests the State possibly would have
put on a different punishment case or that the trial court may have given “a
bit of a concession to a defendant who ‘streamlines the process’ of a trial.”  

            In Schaired v. State,
counsel advised the defendant to elect sentencing by a jury because the trial judge
assigned to the case was “‘generally regarded . . . as the toughest sentencer
in Harris County.’”  786 S.W.2d 497, 498 (Tex. App.—Houston [1st Dist.] 1990,
no pet.).  However, it was later discovered that a visiting judge would preside
over the case.  Id.  Counsel incorrectly advised the defendant that if
he decided to change his election to be sentenced by the judge, there was no
chance the judge originally assigned to the case would determine the sentence. 
Id.  The original judge, however, returned to court for sentencing and
assessed punishment at 50 years’ confinement.  Id.  In denying a motion
to abate, the court noted the “dangers inherent in an appellate tribunal making
an estimate, in hindsight, about the decision a trial judge (or jury) would
have reached under the same or similar circumstances.”  Id. at 499.  

            In Ross v. State, trial
counsel failed to file an election for jury sentencing.  180 S.W.3d 172, 177
(Tex. App.—Tyler 2005, pet. ref’d).  The appellant argued that because the
judge imposed the maximum sentence, appellant at worst would have “tied” the
sentence if the jury had assessed punishment, and might have received a lesser
sentence.  Id.  However, the court similarly refused to speculate that
the jury might have assessed a lesser punishment.  Id.

We follow the Schaired
and Ross courts in refusing to speculate as to whether the judge would
have imposed a lesser sentence, and Lamb has advanced no reasoning suggesting
his sentence would have been less severe if imposed by the judge.  

The evidence adduced during
the punishment phase makes us doubt whether Lamb had hope for a more lenient
sentence regardless of whom he elected to decide it.  During the punishment
phase, the jury learned that after being arrested for murdering Carter, Lamb
was confronted about the shooting at a clothing store by Paul Simpson, a friend
of Carter’s.  Lamb responded by shooting Simpson several times.  After Simpson
fell to the ground, Lamb stood over him, aimed his gun at Simpson’s head, and
pulled the trigger, but the gun did not fire.  Roughly ten people were in the
store at the time.  The jury also learned of Lamb’s array of tattoos, including
five bullets on his face, an AK-47 assault rifle and dynamite on his chest, and
the phrase “Fuck Y’all” accompanied by an obscene hand gesture on his side. 
Lastly, the jury learned of Lamb’s prior misdemeanor and felony convictions.  In
light of the foregoing evidence, Lamb offers no reasoning to suggest that the
judge would have given Lamb a lesser sentence or that the State would have
presented a different case at the punishment phase if the judge were assessing
punishment.  Although counsel clearly erred, Lamb has not shown a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  See Strickland, 466 U.S. at 694.  

Next, Lamb complains counsel
failed to secure rulings on two motions in limine.[1]  But it is not
clear from the record that trial counsel in fact failed to secure the rulings. 
Although the motions filed with the court do not contain the judge’s signature
or markings reflecting that the motions were granted or denied, the trial court
did schedule a hearing on pre-trial motions the morning of trial.  No record of
this pre-trial hearing is included in the record.  However, during trial counsel
approached the bench twice to address the admissibility of evidence covered by
the motions in limine.  

A claim of ineffective counsel
must be firmly supported by the record.  Thompson, 9 S.W.3d at 814. 
Here, it is not clear that counsel did not secure rulings on the motions in limine,
and, in fact, counsel’s conduct during trial in approaching the bench to
discuss the motions in limine and the admissibility of evidence addressed by
the motions suggests that one or both were possibly granted during the
pre-trial hearing.  However, we decline to speculate as to whether counsel
secured rulings on the motions because at any rate the record does not
“affirmatively demonstrate the alleged ineffectiveness.”  Id.  Furthermore,
even if counsel did not secure rulings on the motions, his decision could have
been a strategic one.  Lamb has not rebutted the presumption that his counsel’s
conduct fell within the wide range of reasonable representation.

Lamb finally complains that
counsel failed to object to the State’s improper closing argument. 
Specifically, Lamb contends counsel should have objected when the State
suggested Lamb “shipped [Green] to Dallas” to keep her from talking to anyone
about the murder.  Lamb argues this suggestion was outside the record as Green
did not explicitly state Lamb was the person who forced her to go to Dallas
after Carter’s murder.  

Generally, isolated instances
of a failure to object to inadmissible argument or evidence does not
necessarily render counsel ineffective.  Hill v. State, 303 S.W.3d 863,
879 (Tex. App.—Fort Worth 2009, pet. ref’d).  Moreover, assuming arguendo the
argument was improper, the record does not affirmatively reflect why counsel
did not object.  As such, Lamb has failed to rebut the presumption that
counsel’s decision not to object was reasonable.  See Salinas,
163 S.W.3d at 740.  Having found none of the bases for Lamb’s ineffective-assistance-of-counsel
claim meet the requirements imposed by Strickland, we overrule Lamb’s
second issue.  

IV

Lamb next complains that the
trial court erred in charging the jury on the law of parties.  Lamb first
complains the instruction was improper because no notice was given in the
indictment that the State intended to pursue a theory of culpability based on the
law of parties.  Lamb further complains that the evidence was insufficient to
support a law-of-parties instruction.

The law of parties provides
that a party may be held “criminally responsible as a party to an offense” if
the offense was committed “by his own conduct, by the conduct of another for
which he is criminally responsible, or by both.”  Tex. Penal Code § 7.01(a).  A
person is criminally responsible for an offense committed by the conduct of
another if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Id. § 7.02(a)(2).  

It is well-settled that the
State need not specify in the indictment its intent to seek a conviction based
on the law of parties.  Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex.
Crim. App. 2005); see also Marable v. State, 85 S.W.3d 287, 292 (Tex.
Crim. App. 2002) (rejecting contention that indictment did not provide adequate
notice for accused to prepare defense when indictment did not allege State’s
intended reliance on law of parties).  It was therefore unnecessary for the
indictment to indicate the State intended to pursue a conviction based on a
law-of-parties theory.

In determining whether the
accused participated as a party, the court may look to events occurring before,
during, and after the commission of the offense, and may rely on actions of the
defendant which show an understanding and common design to do the prohibited
act.  Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).  The
evidence outlined above in both the factual background and in response to
Lamb’s first  issue is sufficient to support a “guilty” verdict against Lamb as
the primary actor or as a party to the offense.  See Ransom v. State,
920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (holding that when the evidence is
sufficient to support both primary and party theories of liability, the trial
court does not err in submitting an instruction on the law of parties).  Lamb’s
third issue is overruled.  

V

Finally, Lamb complains the
State improperly argued outside the record during closing argument when the
prosecutor stated:  “And just to make sure nobody else can talk to [Green], he
ships her to Dallas.”  Defense counsel did not object.  Lamb contends the State
argued facts outside the record because although Green testified it was not her
decision to go to Dallas, she was prohibited from testifying as to what
compelled her to go.  

Lamb acknowledges that error
based on improper argument is generally waived on appeal if counsel failed to timely
object at trial.  See Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim.
App. 1996) (absent an objection, all improper jury argument is waived); Campos
v. State, 946 S.W.2d 414, 417–18 (Tex. App.—Houston [14th Dist.] 1997, pet.
ref’d).  Lamb argues, however, that “this Court may consider the trial as a
whole and all other failures of counsel when determining the cumulative
error.”  Assuming the argument was improper, Lamb does not specify what exactly
we should consider concerning the “trial as a whole.”  Furthermore, we have
determined Lamb did not receive ineffective assistance of counsel based on the
complaints he has raised in this appeal.  Accordingly, we decline Lamb’s
invitation to consider cumulative error despite trial counsel’s failure to
object to an allegedly improper closing argument.  Lamb’s fourth issue is
overruled.  

* * *

For the
foregoing reasons, we affirm the trial court’s judgment.

 

 

                                                                                    

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown 

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] The first motion required
the State to approach the bench to obtain a ruling on admissibility before
introducing any evidence of prior arrests or acts of misconduct, any written or
oral statements by Lamb purporting to represent admissions of guilt or
knowledge of facts involved in the case, and any extraneous offenses allegedly
committed by Lamb.  The second motion includes the evidence addressed by the
first motion as well as evidence showing Lamb called or threatened potential
witnesses, that he compelled the prostitution of underage and of-age females,
that he was known to carry a handgun and associate with gang members, and that
he was a known member of the Blood street gang.