# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-14-00327-CR

**Johan Dilson De Souza, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2012-587, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Johan Dilson De Souza of the offense of state jail felony theft of property valued between $1,500 and $20,000. *See* Tex. Penal Code § 31.03(e)(4).[1] In six points of error, appellant challenges the legal sufficiency of the evidence, the jury verdict form, the exclusion of evidence, and the denial of a mistrial; and he raises ineffective assistance of counsel. For the following reasons, we affirm.

---

[1] Section 31.03(e)(4) of the Penal Code was amended in 2015 to increase the value of the stolen property to be between $2,500 and $30,000 for the offense of state jail felony theft of property. *See* Act of June 20, 2015, 84th Leg., R.S., ch. 1251, § 10, 2015 Tex. Gen. Laws 4209, 4213 (effective Sept. 1, 2015) (current version at Tex. Penal Code § 31.03(e)(4)). The amendment is not applicable here.

## BACKGROUND

On July 1, 2012, appellant was employed in security at condominiums in New Braunfels, and his supervisor was Alfred Adams. On that day, Gary Englert's trailer and golf cart were parked in the condominium's parking lot. At around 11:44 a.m., appellant and his friend Brian Ledezma arrived at the parking lot in Ledezma's truck. They hitched the trailer and golf cart to the truck and then took the property to Adams's residence. After leaving the trailer and golf cart at Adams's residence, appellant returned to the condominiums in his friend's truck.

Shortly after appellant returned, Englert told Adams and appellant that his trailer and golf cart were missing and asked about tow truck companies that might have towed the trailer and golf cart. Appellant did not tell Englert that he had just moved the property or its location but that he would help "try to find it." Around two hours later, Englert reported the missing property to the police. A New Braunfels police officer was dispatched to investigate. During his investigation, the officer located video footage from an adjacent resort that showed appellant and Ledezma arriving at the parking lot at around 11:44 a.m. and then driving away with the golf cart and trailer hitched to the truck. Appellant had left during the police investigation but, when he returned and was questioned by the police officer, he told the police officer that he had taken the trailer and golf cart and provided directions to Adams's residence. Appellant also gave his cellphone to the officer and told the officer "to look in [his] phone." Appellant showed the officer text messages and phone calls between appellant and Adams on the day of the incident. The officer "noticed that there had been somewhere around 15 or 20 phone calls between [appellant] and [Adams] on that day." Appellant

2

was arrested shortly thereafter and indicted several months later for the offense of state jail felony theft of property.

Appellant entered a plea of not guilty, and the case was tried before a jury. The State's theory was that appellant stole the golf cart and trailer for $1,000. On the day of the offense, appellant was in the process of buying a motorcycle and needed $1,000 to complete the purchase. The State's witnesses included the police officer dispatched to investigate the missing property and Englert, the owner of the property. Englert testified about his attempts to locate his missing property, his interactions with Adams and appellant, and his property's value. Englert testified that the trailer and golf cart had a combined estimated value of $3,000, that he had permission from Adams and appellant to leave the trailer and golf cart in the parking lot on the day of the incident, and that he did not give Adams or appellant consent to use, move, or possess his property. He also testified that during the time period between notifying Adams and appellant that his property was missing and his contact with the police, they did not tell him that appellant had taken the property to Adams's house but that appellant told him, "We'll help you try to find it."

The police officer testified about his investigation and interactions with Englert, Adams, and appellant. The officer testified that appellant eventually provided the location of the property and admitted that he took the trailer and golf cart for $1,000. The officer testified that defendant told him that he wanted to buy a motorcycle, that Adams was going to give him "$1,000 towards a bike" for taking the trailer and golf cart, and that "sometime between stealing the trailer and the time [the officer] arrived on scene to take a report [appellant] had purchased a motorcycle." The officer also answered "Yes" when asked: "So [appellant] told you he purchased

3

a motorcycle and had the thousand dollars from what he made stealing this golf cart and trailer?"

As to appellant's disclosure of the property's location, the officer testified:

[Prosecutor]: Did you question [appellant] about the golf cart and trailer?

[Officer]: Yes, I did. I asked him if he knew where it was, and he admitted that he did know where it was.

[Prosecutor]: Did he tell you where it was?

[Officer]: Yes. He said it was behind a car dealership on Highway 46 South. I believe he said the name of the car dealership was Hill Country Trucks, or Hill Country Motors.

[Prosecutor]: Now, when he described to you the property that he left the golf cart and trailer on, did he tell you whose property that was?

[Officer]: No. He first said it was on 46 South somewhere. As we questioned him more, he said it was behind the car dealership. As we questioned him more, he said it was at a buddy's house. And as we questioned him more, he eventually admitted that it was at [Adams]'s house.

The State's exhibits included the surveillance video from the adjacent resort that showed appellant and Ledezma pulling into the parking lot in Ledezma's truck and then leaving with the trailer and golf cart hitched to the back of the truck, pictures of the trailer and golf cart, and screen shots of the text messages exchanged between Adams and appellant on the day of the incident. Adams's messages that he texted to appellant around 11:22 a.m. stated in part: "Whats up bro please come through for me" and "I'll give you the 1st $1000 on your bike." Appellant responded to this message by texting back "on our way." Appellant texted another message at 1:52 p.m., stating: "Shit thanks for the heads up." Adams responded "Cool," and then appellant

4

responded: "Asshole." Another exchange of text messages between appellant and Adams occurred around 2:46 p.m.:

| Adams: | Go Go<br>Where are u at |
|--------|------------------------|
| Appellant: | On my way back |
| Adams: | Hurt hurt<br>Huey Hurry |
| Appellant: | Why |
| Adams: | Hury |
| Appellant: | I am why |
| Adams: | Hury Hury |
| Appellant: | I fucking am. |

The officer testified that appellant told the officer to "look in his phone" and that the officer did so and that they discussed the text messages at that time.

The defense's witnesses included appellant, Ledezma, and Casey Richardson who lived with Adams at the time of the incident. Ledezma confirmed that, after appellant received numerous phone calls from Adams on the morning of July 1, 2012, he and appellant used his truck to move the trailer and golf cart to Adams's house, but he did not think they were stealing the property. Ledezma also testified that Adams was at the condominiums when they arrived on that morning and that the hitch for his truck was where Adams said it would be. Richardson testified that appellant and Ledezma brought the property to her and Adams's residence on July 1, 2012, and that

5

Adams was arrested approximately one month later for the crime. She testified that she was "worried that [Adams] had [appellant] bring the trailer over there and that [Adams] knew because he's had other same situations at his other jobs" and that she was "worried" because Adams "ha[d] stolen from every job that he ever worked at." Appellant testified that he moved the trailer and golf cart to Adams's house at the instruction of Adams. According to appellant, there were complaints about the trailer and golf cart being left in the parking lot so Adams asked him to move the property to Adams's residence.[2] Appellant admitted that he was in the process of purchasing a motorcycle on July 1, 2012, and that the final payment for the purchase was $1,000, but he testified that he did not need or receive $1,000 from Adams.

The jury found appellant guilty of the offense of theft of property valued between $1,500 and $20,000. After the punishment phase of the trial, the jury assessed punishment at 180 days' confinement in the state jail division of the Texas Department of Criminal Justice and recommended community supervision. The trial court entered judgment in accordance with the jury's verdict, assessing punishment at 180 days' confinement but suspending imposition of the sentence and placing appellant on community supervision for three years. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

---

[2] Appellant testified as follows as to his reason for moving the property to Adams's property:

I was informed that [the coordinator of company that he worked for] had told him that it had many complaints on it and that we needed to move it, but every tow company was going to charge him fees, and that we could save him money, because he was supposed to have left recently, by moving it to the lot and, when he was prepared to leave, that he would return the trailer to him.

6

## ANALYSIS

**Sufficiency of Evidence**

Appellant's first and third points of error challenge the sufficiency of the evidence. He contends that the evidence was legally insufficient to convict him of theft either as the principal actor or as a party to the offense and that his alleged deception in taking the property was legally insufficient to sustain his conviction.

*Standard of Review*

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778–79 (Tex. Crim. App. 2007).

*Evidence of Theft*

In his first point of error, appellant contends that the evidence was legally insufficient to convict him of theft either as the principal actor or as a party to the offense. *See* Tex. Penal

Code § 7.01(a) (holding person "criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both"). "A person commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a); *see Byrd v. State*, 336 S.W.3d 242, 250–51 (Tex. Crim. App. 2011); *Hill v. State*, 633 S.W.2d 520, 521 (Tex. Crim. App. 1981). "'Appropriate' means . . . to acquire or otherwise exercise control over property other than real property." Tex. Penal Code § 31.01(4)(B). The intent to commit theft may be inferred from the actions or conduct of the defendant. *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989); *see Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (noting that intent may be inferred from circumstantial evidence, such as acts, words, or conduct of appellant).

Here the State presented evidence that appellant took the trailer and golf cart without the owner's consent. Englert testified that he did not give Adams or appellant consent to use, move, or possess the trailer or golf cart, and that, after he told appellant and Adams that his property was missing, he was with them for "an hour or two" and, during that time, appellant and Adams did not tell Englert that appellant had moved his property or that they knew where the property was. In fact, appellant said "We'll help you try to find it." The police officer testified that Adams initially denied any knowledge of the location of the golf cart and trailer and, only after the police officer showed Adams the surveillance video, did Adams identify appellant as one of the two men in the video. Appellant had left the property at that point. After appellant returned, the police officer testified that appellant admitted to him that he took the trailer and golf cart for $1,000 towards the purchase of

8

a motorcycle. The officer testified: "[I]n my interview with [appellant], he said sometime between stealing the trailer and the time I arrived on scene to take a report he had purchased a motorcycle."

The officer also testified that the standard practice at the condominium was to call a tow truck company when a vehicle needed to be removed from the parking lot, not to use a private vehicle to remove the vehicle to private property. The officer further testified about the phone calls and text messages that were exchanged between Adams and appellant, including the messages that Adams sent to appellant at 11:22 a.m. that referenced the $1,000 payment and appellant's response that he and Ledezma were "on our way." The surveillance video shows that appellant and Ledezma arrived at the parking lot shortly after this message exchange. The subsequent messages are also consistent with the State's version of the events on that day, and appellant admitted that, after he was placed in the police car on the day of the incident, he said to Adams when he "just saw [Adams] walk in front of [him]," "You snitched on me bitch."

Appellant presented conflicting evidence to support his theory that he did not steal the trailer and golf cart. Appellant testified that he did not tell the police officer that he stole the trailer and golf cart but that he had moved the property to Adams's house when the officer first asked him.[3] He also testified that he did not think that he was stealing anything, that he only moved the

---

[3] Appellant testified:

[Prosecutor]:  . . . When [the police officer] asked you where the golf cart and trailer were, you initially said that you had taken it off the property, correct?

[Appellant]:  I had moved it off the property—

[Prosecutor]:  Okay.

property at the request of his boss Adams, and he denied any knowledge that his actions were illegal. He also denied needing $1,000 on the day of the incident and explained his reasons for not letting the owner know where the property was sooner. He testified that he was "scared [Adams] was going to get mad." He also testified that Adams was "[v]ery intimidating" and that appellant "never talk[ed] back to anyone superior to [him]." His friend Ledezma, who helped appellant move the trailer and golf cart to Adams's residence, similarly testified that he did not think that he had stolen the property at any point.

It was for the jury, however, to weigh and resolve the conflicts in the evidence. *See Clayton*, 235 S.W.3d at 778–79. Faced with the conflicting evidence, the jury could have found appellant's testimony that he did not intend to steal the golf cart and trailer not credible. The jury could have credited the testimony of the officer and Englert, including Englert's testimony that

---

[Appellant]:   —to [Adams]'s house because he told me to.

[Prosecutor]:   But you did not say, "to [Adams]'s house," until being questioned—

[Appellant]:   No, I told him—

[Prosecutor]:   —four times as to where it was located?

[Appellant]:   No. I asked him—he asked me, I told him. And he told me, "Okay. You stole it." I said, "No, sir." I said, "I moved it because [Adams] told me to move it." And he told me, once again, "Okay. You stole it." And I said, "No." . . . He asked me several times. And finally he said, "Okay. Where is it at?" And I said, "[Adams]'s house." He said, "Do you know the address?" I said, "No, I do not. I can tell you how to get there, though." And he said, "Okay. How do you get there?" And I went to explaining how to get there.

Appellant also answered "Yes" when asked if the police officer "was lying when he testified under oath."

10

appellant told Englert that "[w]e'll help you to try to find it" after Englert told him about the missing property, to reasonably infer appellant's intent to deprive Englert of the property. *Id.* (noting that jury entitled to weigh and resolve conflicts in evidence and draw reasonable inferences therefrom and that "most importantly, the jury was able to assess [defendant]'s credibility and demeanor"). Appellant admitted that his conduct gave Englert a false impression that appellant had not taken Englert's property. The jury also could have credited the evidence that appellant received $1,000 to "move" property valued at $3,000 and the text message and verbal exchanges between Adams and appellant—including the statement from appellant to Adams that Adams "snitched" on him and calling Adams expletives—to disbelieve appellant's testimony that he was scared of Adams and just following orders. *Id.*

Viewing the evidence in the light most favorable to the verdict and assuming that the jury resolved the conflicts in the evidence in favor of the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed the offense of theft. *See Jackson*, 443 U.S. at 319. Thus, we conclude that the evidence was legally sufficient to support the jury's guilty verdict and do not address the evidence to support his conviction as a party. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (citing *Guevara*, 152 S.W.3d at 49 (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992))) ("When the charge authorizes the jury to convict the defendant on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge."); *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999) (citing *Rabbani* for principle that, when court undertakes sufficiency review and trial court's charge authorized jury to convict on more than

11

one theory, "the verdict of guilt will be upheld if the evidence is sufficient on any one of the theories"). We overrule appellant's first point of error.

*Evidence of Deception*

In his third point of error, appellant contends that the evidence was legally insufficient to sustain his conviction because there was no evidence of deception by appellant in taking the property. This point of error focuses on the element of intent. Appellant argues that there was no evidence that he possessed the requisite criminal intent at the time the golf cart and trailer were taken because any deception by appellant occurred after the property had already been taken. Appellant appears to be arguing that the State failed to prove that Englert's consent was ineffective because it was induced by deception. *See* Tex. Penal Code § 31.01(3)(A) ("Consent is not effective if . . . induced by deception or coercion.").

Here, appellant did not file a motion to quash the indictment or object to the charge, and the indictment alleged the statutory elements of the offense of theft: that appellant unlawfully appropriated property with the intent to deprive Englert of the property. *See id.* § 31.03(a); *Geick v. State*, 349 S.W.3d 542, 546 (Tex. Crim. App. 2011) (noting that, absent a notice-based motion to quash, a charging instrument need only allege statutory elements of offense of theft). Although the State presented evidence of deceptive conduct by appellant after he had already taken the trailer and golf cart and returned to the condominiums, that evidence supported the State's theory that appellant's version of events was not credible and demonstrated appellant's consciousness of guilt. The State's theory was not ineffective consent by deception, but rather the State presented evidence through the direct testimony of Englert that he did not give appellant or Adams consent to use, move,

12

or possess the trailer or golf cart. *See Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011) (noting that, "[u]nder *Jacskson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory elements that it did not allege"). On this basis, we overrule appellant's third point of error.

**Jury Verdict Form**

In his second point of error, appellant contends that there was a "fatal variance" in the jury verdict form because it did not require a finding of theft from the actual person alleged as the victim in the indictment. The jury returned its verdict on a form that stated, "We, the Jury, find [appellant] GUILTY of the felony offense of Theft of Property of an amount of $1,500.00 or more but less than $20,000.00, as charged in the indictment." Appellant asserts that "the jury failed to expressly find him guilty beyond a reasonable doubt of committing theft from the same *person* as shown by the evidence as the owner of the property and from 'Gary Englert' as alleged in the indictment."

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). Appellant did not object to the jury charge. Thus, because the jury charge error was not preserved,

13

the error, if any, requires reversal only if the record shows egregious harm. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza*, 686 S.W.2d at 171).

When a trial court attaches a verdict form to the jury charge, it becomes "part of the jury charge, and, as in the present case, is incorporated by reference to the main charge." *See Jennings v. State*, 302 S.W.3d 306, 310 (Tex. Crim. App. 2010). Here the form references the offense "as charged in the indictment," and the indictment expressly referenced "Gary Englert" as the owner of the trailer and golf cart. *See* Tex. Code Crim Proc. arts. 21.08 (addressing allegation of ownership in indictment), 21.09 (requiring personal property alleged in indictment to be identified, among others, by ownership if known). The application paragraph of the jury charge also specifically referenced "Gary Englert" as the owner of the golf cart and trailer and the offense "as alleged in the indictment." *See Jones v. State*, 815 S.W.2d 667, 669 (Tex. Crim. App. 1991) (noting that application paragraph is portion of charge which authorizes jury to act); *see also Jennings*, 302 S.W.3d at 310; *Callins v. State*, 780 S.W.2d 176, 190–01 (Tex. Crim. App. 1989) (considering substantive charge and verdict forms as whole).

Appellant has not cited, and we have not found, any authority that would support his contention that there was a "fatal variance" in the jury's verdict form because it did not expressly name Englert as the owner of the stolen property. On this record, we conclude that appellant's contention is without merit and do not find error in the challenged jury verdict form. *See Jennings*, 302 S.W.3d at 309–10 (describing requirements of jury verdict form). Further, finding no error, we do not conduct a harm analysis. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013) ("Because there is no charge error in this case, we need not conduct a harm analysis."); *Barrios*

14

*v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009) ("Finding no error in the jury charge, we do not consider whether appellant was harmed."). We overrule appellant's second point of error.

**Exclusion of Evidence**

In his fourth point of error, appellant argues that the trial court committed reversible error in excluding testimony from Casey Richardson, who lived with Adams and their children at the time of the theft, that Adams told her that he "'set up'" appellant.[4] The excluded testimony from Richardson as reflected in appellant's offer of proof was that Adams told her that he had stolen the golf cart and that he "actually broke down crying and said that he needed help because he has a problem with taking things, and that he knew that it was wrong to let [appellant] go down for something that he did, and that he would make sure and tell the truth so that [appellant]'s life wasn't ruined by something he did."[5]

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when

---

[4] Adams was under subpoena but neither side called him to testify at trial.

[5] Testimony from Richardson that was admitted at trial included testimony that appellant told her when he arrived with the property at her house that Adams asked appellant "to drop the trailer off there" and that she was worried "[b]ecause [Adams] has stolen from every job that he's ever worked at." She also testified that she did not have any reason to believe that appellant was stealing the trailer because appellant "worked for [Adams], and [Adams] asked him to deliver it." She further testified that she was "worried that [Adams] had [appellant] bring the trailer over there and that [Adams] knew because he's had other same situations at his other jobs," that Adams was arrested about a month after the incident in connection with the theft of the golf cart and trailer, that she and Adams were no longer a couple, and that she was afraid of Adams because "[h]e's been violent in the past."

15

its decision "lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *see Montgomery*, 810 S.W.2d at 391.

Appellant contends that the excluded testimony from Richardson about appellant's involvement in the theft was admissible as a declaration against interest, an exception to the rule against hearsay. *See* Tex. R. Evid. 803(24).[6] Texas Rule of Evidence 803(24) provides in relevant part that a statement against interest is one "which was at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in declarant's position would not have made the statement unless believing it to be true" and that "a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*; *see Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004); *Davis v. State*, 872 S.W.2d 743, 747–49 (Tex. Crim. App. 1994). Factors that a trial court may consider in determining the sufficiency of corroborating circumstances to indicate the trustworthiness of the statement include: (1) whether the declarant's guilt is inconsistent with the defendant's guilt; (2) whether the declarant was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the statement was made; and (6) the existence of independent corroborating facts. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999); *Davis*, 872 S.W.2d at 749. The burden is on the party seeking to admit the statement to show that corroborating circumstances exist. *See Davis*, 872 S.W.2d at 749.

---

[6] Texas Rule of Evidence 803(24) was amended in 2015, effective April 1, 2015. We quote the rule as it existed prior to the amendment.

16

On this record, we conclude that the trial court would not have abused its discretion in finding that Adams's alleged statements to Richardson exonerating appellant—that Adams needed help, knew he had a problem, would tell the truth, and knew that it "was wrong to let [appellant] go down for something that he did"—did not tend "to expose [Adams] to criminal liability" and, thus, that these statements did not fall within the declaration against interest exception to hearsay. *See* Tex. R. Evid. 803(24); *Walter v. State*, 267 S.W.3d 883, 899 (Tex. Crim. App. 2008) (concluding that "the trial court abused its discretion in admitting [declarant]'s narrative *in toto* without examining each fact asserted in the narrative to assess whether that fact was directly self-incriminating").

Further, the trial court would not have abused its discretion in finding that appellant failed to show corroborating circumstances that clearly indicated the trustworthiness of Adams's alleged admission that he committed the theft. Adams's alleged admission was not inconsistent with appellant's guilt. The State presented evidence that Adams was a party to appellant's theft, in that he asked appellant to take the property and offered to pay appellant $1,000 to do so. Adams's alleged admission also was made about one month after the incident and after Adams had been arrested; it was made to the mother of his children with whom Adams was living at the time;[7] and Adams was not in position to have committed the crime by himself. *See Davis*, 872 S.W.2d at 749

---

[7] Given our resolution on Richardson's excluded testimony, the parties' analysis in their briefing on the issue of common law marriage and the confidential communication privilege is not dispositive and, thus, we do not address it. *See* Tex. R. App. P. 47.1, 47.4; *see also* Tex. R. Evid. 504 (defining confidential communication privilege of spouses).

17

(noting that evidence of corroborating circumstances must clearly indicate trustworthiness and noting that "test is not an easy one").

We conclude that the trial court's decision to exclude Richardson's testimony of Adams's alleged admission and statements about appellant's involvement in the theft was not outside the zone of reasonable disagreement. Thus, we conclude that the trial court did not abuse its discretion when it excluded this evidence and overrule appellant's fourth point of error.

**Denial of Mistrial**

In his fifth point of error, appellant argues that the trial court erred in not granting appellant a mistrial after the bailiff heard one of the jurors say that she did not think the offense should be a felony and wanted to speak to the court.

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). "Whether an error requires a mistrial must be determined by the particular facts of the case." *Id*. (citing *Ladd*, 3 S.W.3d at 567). We review a trial court's refusal to grant a mistrial for an abuse of discretion. *See Hawkins*, 135 S.W.3d at 76–77. We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling, *Ocon*, 284 S.W.3d at 884 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)), and uphold the ruling if it was within the zone of reasonable disagreement. *Id*.

Following the guilty verdict, the bailiff, trial court, and defense counsel had the following exchange:

| | |
|---|---|
| [Trial Court]: | [T]he bailiff has just been approached by [juror] saying now she wants to change her verdict to not guilty. I'm not going to allow that. No one asked for a poll of the jury. All hands were raised. She has said that -- something to the effect that she thinks he's guilty, but something to the effect that perhaps it ought to be a misdemeanor. Is that correct, sir? |
| [Bailiff]: | Yes, Your Honor. She didn't indicate whether she wanted to change her vote. She said she didn't think it should be a felony offense. |
| [Trial Court]: | Did she say she wanted to change her vote or not? |
| [Bailiff]: | I asked her did she want to inform the Court that she wanted to change her vote. She said, no, she just wanted to talk to the Court. |
| [Trial Court]: | Well, I am not going to allow that. That would not be appropriate. |
| [Defense Counsel]: | Judge, I will object. If a juror is expressing doubt about whether that was her individual vote or not, I think she should be heard by the Court. |
| [Trial Court]: | I'm not going to do that, Counsel. |
| [Defense Counsel]: | I would ask for a mistrial, Judge. |
| [Trial Court]: | It's denied. |

Based on our review of the record, we find no abuse of discretion by the trial court when it denied appellant's request for a mistrial. No party requested jury polling. *See* Tex. Code Crim. Proc. art. 37.05 (authorizing parties to have jury polled); *Reese v. State*, 773 S.W.2d 314, 317 (Tex. Crim. App. 1989) (noting that "a poll of the jury must be requested or it is waived"). Further, based on the bailiff's statements, the trial court could have found that the juror did not wish to change her vote,

19

only that she disagreed that the crime of theft for property valued under $20,000 should be a felony. The record does not show that the juror was unable to follow the law as instructed by the trial court; only that she disagreed with certain aspects of the law. We overrule appellant's fifth point of error.

**Ineffective Assistance of Counsel**

In his sixth point of error, appellant argues that he should be granted a new trial because his trial attorney was ineffective given the totality of the circumstances in his case. Appellant contends that his trial attorney was deficient by failing: (i) to challenge appellant's alleged confession to the police officer through a motion to suppress or objection at trial; (ii) to introduce a video recording of appellant while he was in the back of the police car on the day of the incident; (iii) to challenge the search of appellant's cellphone through a motion to suppress or to object to the introduction of text messages from the phone; (iv) to subpoena and offer appellant's bank records into evidence; and (v) to present character evidence.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient

20

performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308. If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*. (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392; *see Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) (noting "presumption that trial counsel's performance was reasonably based in sound trial strategy").

Although a motion for new trial was filed, appellant did not claim ineffective-assistance of counsel in the motion. The record is silent as to why his trial attorney did not object or seek to suppress the complained-of evidence or seek to admit the recording from the police car, appellant's bank records, and character evidence, whether there was a strategic reason for these decisions, or what the particular strategy for counsel's conduct was. Consequently, the record before this Court is not sufficiently developed to allow us to evaluate trial counsel's supposedly deficient performance. *See Menefield*, 363 S.W.3d at 593. Absent record evidence regarding counsel's

21

strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd); *Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd); *see also Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined.").

The record in this case reveals that the defense trial strategy was to demonstrate that appellant never intended to steal the trailer and golf cart and that he was only following his supervisor's order to temporarily move the trailer and golf cart. At trial, counsel aptly presented evidence to support this version of the events on that day. The fact that the defense strategy ultimately proved unsuccessful does not render counsel's assistance ineffective. Based on the record before us, we conclude that appellant has failed to demonstrate deficient performance on the part of his trial attorney. *See Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'" (quoting *Goodspeed*, 187 S.W.3d at 392)). Because appellant failed to meet his burden on the first prong of *Strickland*, we do not consider the requirements of the second prong—prejudice. *See Lopez*, 343 S.W.3d at 144; *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). We overrule appellant's sixth point of error.

**CONCLUSION**

Having overruled appellant's points of error, we affirm the judgment.

_____
Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed:   April 6, 2016

Do Not Publish